Magistrate Judge Mary Alice Theiler

FILED ENTERED
LODGED RECEIVED

FEB 26 2010

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                DEPUTY

10-MJ-00088-CMP

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | ) | CASE NO. MJ10-88 |
|---|---|---|
| Plaintiff, | ) | COMPLAINT for VIOLATION |
| v. | ) | Title 18, U.S.C. Sections 2423(b), (c), (f) and 2251(c)(1), (c)(2)(A) |
| CRAIG THOMAS CARR, | ) | |
| Defendant. | ) | |

BEFORE, Mary Alice Thieler, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE
### (Travel with Intent to Engage in Illicit Sexual Conduct)

From on or about January 12, 2010, to on or about January 22, 2010, CRAIG THOMAS CARR, a citizen of the United States, with last known residence in Kent, in the Western District of Washington, did travel in foreign commerce, from the United States to Cambodia, for the purpose of engaging in any illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with another person under 18 years of age.

All in violation of Title 18, United States Code, Sections 2423(b) and (f).

COMPLAINT/CARR - 1
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## COUNT TWO
### (Engaging in Illicit Sexual Conduct in a Foreign Place)

Between on or about January 12, 2010, and continuing until on or about January 22, 2010, CRAIG THOMAS CARR, a citizen of the United States, with last known residence in Kent, in the Western District of Washington, did travel in foreign commerce from Seattle, Washington, to Cambodia, and did engage in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with Child Victim A, a female under the age of 18.

All in violation of Title 18, United States Code, Sections 2423(c) and (f).

## COUNT THREE
### (Engaging in Illicit Sexual Conduct in a Foreign Place)

Between on or about January 12, 2010, and continuing until on or about January 22, 2010, CRAIG THOMAS CARR, a citizen of the United States, with last known residence in Kent, in the Western District of Washington, did travel in foreign commerce from Seattle, Washington, to Cambodia, and did engage in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with Child Victim C, a female under the age of 18.

All in violation of Title 18, United States Code, Sections 2423(c) and (f).

## COUNT FOUR
### (Sexual Exploitation of a Child)

Between on or about January 14, 2010, and continuing until on or about January 22, 2010, CRAIG THOMAS CARR did employ, use, persuade, induce, entice, and coerce a minor, Child Victim A, to engage in sexually explicit conduct outside of the United States, its territories and possessions, for the purpose of producing visual depictions of such conduct, that is digital images, and the Defendant intended such visual

COMPLAINT/CARR - 2
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

depictions to be transported to the United States by any means, including by using any means or facility of interstate or foreign commerce or mail.

All in violation of Title 18, United States Code, Sections 2251(c)(1), (c)(2)(A), and (e).

## COUNT FIVE
### (Sexual Exploitation of a Child)

Between on or about January 14, 2010, and continuing until on or about January 22, 2010, CRAIG THOMAS CARR did employ, use, persuade, induce, entice, and coerce a minor, Child Victim C, to engage in sexually explicit conduct outside of the United States, its territories and possessions, for the purpose of producing visual depictions of such conduct, that is digital images, and the Defendant intended such visual depictions to be transported to the United States by any means, including by using any means or facility of interstate or foreign commerce or mail.

All in violation of Title 18, United States Code, Sections 2251(c)(1), (c)(2)(A), and (e).

The complainant further states that:

## INTRODUCTION

1. I am a Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), known prior to March 2003 as the United States Customs Service. I am currently assigned to the office of the Special Agent in Charge (SAC), Seattle, Washington. I have been an agent of ICE and the former United States Customs Service for eight years. ICE is responsible for enforcing the customs and immigration laws and federal criminal statues of the United States. As part of my duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the sexual exploitation of minors by those who travel from the United States to foreign countries to engage in illicit sexual conduct

COMPLAINT/CARR - 3
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

with minors. I have received training in investigating child pornography and child exploitation crimes and have had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256(8)). I have participated in the execution of over thirty search warrants, which involved child exploitation and/or child pornography offenses and the search and seizure of computers, related peripherals, and computer media equipment. I am also a member of the Seattle Internet Crimes Against Children (ICAC) Task Force in the Western District of Washington and work with other federal, state, and local law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children.

2. This Affidavit is being submitted for the purpose of securing a Criminal Complaint and Arrest Warrant. I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe establish probable cause to support the issuance of the requested Criminal Complaint and Arrest Warrant for the above-listed offenses. Where the statements of others are set forth in this Affidavit, they are set forth in substance and in part. Portions of the information set forth in this Affidavit were provided to me by ICE Senior Special Agent (SSA) Christopher Matarelli, assigned to the ICE Attaché Office in Bangkok, Thailand, and are based on SSA Matarelli's written Reports of Investigation which he prepared after interviewing CRAIG THOMAS CARR.

### A. CNP Investigation

3. On or about December 14, 2009, the Cambodian National Police (CNP) received information from the French National Police that a Phnom Penh taxi driver, S.M, had advertised services on an Internet website (hereinafter "the Website") related to the procurement of minors for the purpose of child prostitution.

4. The French National Police and the CNP determined that on January 14, 2010, S.M. had transported a white male from the Phnom Penh International Airport to the Flamingo Hotel in Phnom Penh, Cambodia. On January 14, 2010, and on seven successive days thereafter, S.M. transported the white male between the Flamingo Hotel

COMPLAINT/CARR - 4
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

and a Phnom Penh guest house that was suspected of facilitating child sex tourism. On January 21, 2010, S.M. was arrested by CNP. CNP obtained a signed statement from S.M., in which he confessed to procuring child prostitutes for the aforementioned white male.

5. In particular, on January 22, 2010, CNP located the above-mentioned white male as he walked through the Flamingo Hotel lobby. The white male identified himself as CRAIG THOMAS CARR, a United States citizen. CNP requested that CARR collect his belongings and accompany them to their office for questioning. CARR complied with the request. Once at the CNP Anti-Human Trafficking and Child Protection offices, CARR answered questions regarding his activities in Cambodia. CARR provided a statement to CNP wherein he detailed sexual contact with three minors at a local brothel, each of whom CARR stated he believed were approximately twelve years of age.

6. CARR's belongings were searched by CNP officers. Included in these belongings was a Canon PowerShot A720IS digital camera which contained a digital memory card. CNP previewed the stored images on the memory card and discovered multiple nude images of three apparent child victims. CARR admitted to CNP that he took nude digital photos of the three apparent minors with whom he had sexual contact.

7. On January 22, 2010, CNP traveled to a Phnom Penh area guest house identified as "777." S.M. had identified 777 as the brothel where he took CARR to have sex with the minors. CNP executed a search warrant at the guest house, along with the room that CARR had rented on consecutive nights. During the search, CNP discovered bedding that appeared similar to that depicted in the images found on CARR's camera.

B. **ICE Investigation**

8. On January 22, 2010, ICE SSA Chris Martarelli and ICE Foreign Service National Investigator (FSNI) Vansak Suos were notified that CNP had arrested CARR. That same day, at approximately 5:30 p.m., SSA Matarelli and FSNI Suos arrived at the CNP Anti-Human Trafficking and Child Protection Offices to interview CARR. SSA Matarelli introduced himself and FSNI Suos as ICE investigators. SSA Matarelli advised

COMPLAINT/CARR - 5
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  CARR of his *Miranda* rights utilizing a pre-printed advisement of rights form. CARR
2  acknowledged that he understood each of his rights and waived them in writing. On
3  January 22, 2010, and again on January 23, 2010, SSA Matarelli and FNSI Suos
4  interviewed CARR at the CNP offices.

5      9.      CARR told SSA Matarelli that on or about November 13, 2009, he visited
6  the Website and searched for information related to Cambodian sex tourism. CARR
7  stated that he emailed the contacts listed on four advertisements offering to facilitate sex
8  tourism. CARR said that only one of his emails was answered, and that it was answered
9  by an individual named S.M. According to CARR, he exchanged approximately twenty
10 emails with S.M., in which they discussed CARR's desire to have sex with juvenile
11 females preferably around twelve years of age and sexually inexperienced. CARR stated
12 that S.M. told CARR that he could arrange for the age, appearance, and level of sexual
13 experience that CARR desired. CARR stated that the fees for the minors with whom
14 CARR would have sex were pre-negotiated by email between CARR and S.M. before the
15 foreign travel took place. CARR stated that upon arriving in Cambodia he provided a
16 $3000 payment to S.M. for the first minor female, and that he then gave the remaining
17 two payments of $3000 and $1800 in cash, for the second and third minor females,
18 directly to an adult female operating the brothel.

19     10.     CARR stated that prior to traveling to Cambodia he studied the Protect Act.
20 CARR stated that he knew that President George Bush signed the Protect Act into law
21 and that it was enacted to prosecute adults who travel overseas to have sex with children.
22 CARR then stated, "I am a pedophile. What is going to happen to me?"

23     11.     CARR stated that on January 13, 2010, he departed the United States from
24 San Francisco International Airport on EVA Airlines flight 17 to Taipei, Taiwan,
25 where he then transferred to EVA Airlines flight 265 to Phnom Penh, Cambodia. On
26 January 14, 2010, at approximately 11:45 a.m., CARR arrived at Phnom Penh
27 International Airport where S.M. met him and transported him to the Flamingo Hotel.
28 Later that afternoon, S.M. drove CARR to a guest house identified as "777" where S.M.

COMPLAINT/CARR - 6
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  introduced CARR to an adult female who appeared to be managing the brothel. CARR
2  said that the adult female led five apparent juvenile females into the room and that S.M.
3  told CARR to pick one. CARR then picked one girl and ranked his second and third
4  choices. CARR stated that he mentally noted that each girl matched the desired
5  appearance that he had previously communicated to S.M. CARR said that he thought that
6  the girls were eleven or twelve years-old and that he knew that because they looked young
7  and because S.M. had promised him twelve year-olds.

### Child Victim A

9      12.    CARR stated that the first child victim that he selected was brought to his
10  room in the guest house on the evening of January 14, 2010, by a male who opened the
11  door, nudged Child Victim A into the room and closed the door behind her. CARR
12  described Child Victim A as approximately 4'8" tall and approximately 100 pounds.
13  CARR said that once in the room, Child Victim A walked to the bed and sat down.
14  CARR then gave Child Victim A a necklace and bracelet that he had bought at one of the
15  local markets. CARR stated that he then undressed Child Victim A and fondled her body.
16  CARR said that he lubricated his pinky finger and inserted it into Child Victim A's
17  vagina. After a short while, CARR then lubricated his ring finger and repeated the
18  process and eventually inserted his middle finger into Child Victim A's vagina. CARR
19  stated that the process of inserting sequentially larger fingers over time physically
20  prepared Child Victim A for the insertion of his penis. CARR stated that over the next
21  several hours that he had sexual intercourse with Child Victim A with his unprotected and
22  lubricated penis three or more times. The next morning S.M. transported CARR from the
23  guest house to the Flamingo Hotel.
24      13.    CARR stated that on January 15, 2010, at approximately 3 p.m., S.M.
25  picked him up at the hotel and drove him to the guest house where he was again met by
26  Child Victim A in the same room. CARR stated that the second meeting with Child
27  Victim A was nearly identical to the first. CARR stated that he had sexual intercourse
28  three or four times over the course of the night with Child Victim A. CARR told SSA

COMPLAINT/CARR - 7
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 | Matarelli that he met with Child Victim A again on January 19, 2010, and that the sexual
2 | encounter was nearly identical to the encounters previously described above.
3 |   14. CARR stated that he took photographs of Child Victim A with his Canon
4 | PowerShot A720IS digital camera. CARR stated that he paid each girl $20 for allowing
5 | him to take photographs of them. Approximately twenty images and two videos of Child
6 | Victim A engaging in sexually explicit conduct were among the images recovered from
7 | CARR's camera by CNP. I have reviewed all of these images and videos. One of the
8 | images depicting Child Victim A is described below:
9 |   IMG_1915.JPG: This color image depicts what appears to be a nude
10 |   pubescent Asian female, known as Child Victim A, who is visible from her
11 |   upper thighs to her head. Child Victim A is lying on a bed with her legs
12 |   spread exposing her genital area. The perspective of the image is that of
13 |   the camera level with the genital area of Child Victim A looking up towards
14 |   Child Victim A's head. Child Victim A has pubic hair and slight breast
15 |   development.
16 |   15. On February 20, 2010, Child Victim A was interviewed by SSA Matarelli.
17 | Child Victim A stated that she was sixteen years old and that she was born in 1994.
18 | Child Victim A also stated that she was born in the year of the Pig. The Chinese zodiac
19 | calendar indicates that the year of the "pig" (boar) is from January 31, 1995 to
20 | February 18, 1996. Victim A stated that she does not know her exact date of birth, yet
21 | said that she is sixteen years of age.
22 |   16. Child Victim A told SSA Matarelli that she was paid $300 by an adult
23 | female working at the brothel to spend three nights with CARR. In addition to this
24 | amount, Child Victim A said that CARR paid her to take naked pictures of her.

COMPLAINT/CARR - 8
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

### Child Victim B

17.     CARR stated that on January 16, 2010, at approximately 3 p.m., S.M. picked him up from the hotel and drove him to the "777" guest house. CARR said that upon arriving at the guest house he told S.M. that he wanted to meet his second choice from the original group of five girls that were offered to him on January 14, 2010. CARR described Child Victim B as being a Cambodian girl with dark skin and dark hair that touched her collarbone. CARR estimated Child Victim B as being about 4'9" tall and that Child Victim B weighed about 100 pounds.

18.     CARR stated that Child Victim B arrived in the same room that he had previously shared with Child Victim A, and that he gave Child Victim B a necklace and bracelet. CARR stated that Child Victim B did not speak English and that Child Victim B had small breasts that were not visible through her shirt. CARR stated that he took Child Victim B's clothes off and touched her breasts. CARR then inserted his lubricated finger into Child Victim B's vagina. CARR said that he then lubricated his unprotected penis and, over the course of the night, had sexual intercourse with Child Victim B three or four times.

19.     CARR stated that he met with Child Victim B again on January 18, 2010, and also January 21, 2010, and that the sexual encounters were nearly identical to the encounter described above.

20.     CARR stated that he also took photographs of Child Victim B with his digital camera. As stated above, in CARR's interview with SSA Matarelli, CARR stated that he paid each girl $20 for allowing him to take photographs of them. Approximately sixteen images of Child Victim B engaging in sexually explicit conduct were contained on CARR's camera. I have reviewed these images. One of the images depicting Child Victim B is described below:

   IMG_1932.JPG: This color image depicts what appears to be a nude
   pubescent Asian female, known as Child Victim B, who is visible from her
   upper thighs to her eyes. Child Victim B is lying on a bed with her arms

COMPLAINT/CARR - 9
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

spread out and her legs spread exposing her genital area. The perspective of the image is that of the camera level with the genital area of Child Victim B looking up towards Child Victim B's head. Child Victim B has pubic hair and slight breast development, and based on my training and experience she appears to be between 14 and 16 years of age.

21. As of the date of this affidavit, Child Victim B has not been located by ICE or CNP.

### Child Victim C

22. CARR stated that on January 17, 2010, at approximately 3 p.m., S.M. picked CARR up from the Flamingo Hotel and drove him to the "777" guest house. CARR said that upon arriving at the guest house he told S.M. that he wanted to meet his third choice from the original group of five girls that were offered to him on January 14, 2010. CARR described Child Victim C as being a Vietnamese girl approximately twelve years of age with light colored or died hair that was long enough to touch her collar. Once inside the room, CARR stated that he gave Child Victim C a bracelet and necklace.

23. CARR stated that he took Child Victim C's clothes off and that he touched her breasts and vagina with his hands. Like CARR's previous encounters with Child Victim A and Child Victim B, CARR stated that he lubricated his fingers and inserted his pinky, ring, and middle finger sequentially into Child Victim C's vagina. CARR stated that he then inserted his lubricated and unprotected penis into Child Victim C's vagina. CARR stated that over the course of the evening, he and Child Victim C had sexual intercourse three or four times.

24. CARR informed SSA Matarelli that he met with Child Victim C again on January 20, 2010, and that the sexual encounter was nearly identical to the encounter described above.

25. CARR also took photos of Child Victim C with his digital camera. As stated above, CARR told SSA Matarelli that he paid each girl $20 for allowing him to take take photographs of them. Approximately nine images of Child Victim C engaging

COMPLAINT/CARR - 10
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 | in sexually explicit conduct were recovered from CARR's camera by CNP. I have
2 | reviewed these images. One of the images depicting Child Victim C is described below:
3 |     IMG_2004.JPG: This color image depicts what appears to be a nude
4 |     pubescent Asian female, known as Child Victim C, who is visible from her
5 |     upper thighs to her head. Child Victim C is lying on a bed with a wooden
6 |     headboard and a red bedspread. Child Victim C has her arms out with her
7 |     hands above her shoulders and her legs spread exposing her genital area.
8 |     The perspective of the image is that of the camera level with the genital area
9 |     of Child Victim C looking up towards Child Victim C's head. Child Victim
10 |     C has pubic hair and slight breast development.
11 |     26.   On February 20, 2010, Child Victim C was interviewed by SSA Matarelli.
12 | Child Victim C stated that she was sixteen years old and that she was born in 1995.
13 | Child Victim A also stated that she was born in the year of the Pig. The Chinese zodiac
14 | calendar indicates that the year of the "pig" (boar) is from January 31, 1995 to
15 | February 18, 1996. Victim C stated that she does not know her exact date of birth, yet
16 | said that she is sixteen years of age.
17 |     27.   Child Victim C told SSA Matarelli that she was paid $250 by an adult
18 | woman at the brothel to spend a number of nights with CARR. Additionally, Child
19 | Victim C said that CARR paid her money to take naked pictures of her.
20 |     28.   With regard to all of the photographs CARR took of the minor victims,
21 | CARR told SSA Matarelli that the photographs were for his own personal use and that he
22 | never intended to distribute them over the internet.
23 |     29.   Subsequent to S.M's arrest, S.M. provided CNP access to his personal email
24 | account. S.M. was taken to a CNP office with Internet access; he logged on to his
25 | account; and S.M. showed CNP email communication between himself and CARR. One
26 | of the emails from CARR to S.M. was dated Sunday, December 20, 2009. In the email
27 | CARR writes, "Before I leave Cambodia I ask you to take me to a Fed Ex store. I would
28 | like to mail my camera memory cards to my home address. Is [sic] safe to do this?"

COMPLAINT/CARR - 11  
Case No.

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, Washington 98101-1271  
(206) 553-7970

30. On January 23, 2010, CARR's wife., B.C., was interviewed by ICE SA Mike Wawrzycki, SA Tim Ensley, and me at CARR's residence in Kent, Washington. During the interview B.C. told me that she and CARR owned one camera that she believed to be a Canon SureShot digital camera, and that CARR had taken it with him on vacation.

31. CARR has a current United States Passport, number 207246794, issued on October 4, 2002. I know that for a person to be issued a United States passport, he/she must present documents showing evidence of United States citizenship.

32. A computer query with Washington Department of Licensing indicates that CARR possesses a valid Washington Driver's License, number CARR*CT491D4, with an expiration date of March 24, 2010. The address listed on CARR's license is 10425 SE 250TH PL #101, Kent, Washington 98031.

33. A copy of CARR's travel itinerary was found in his belongings that were seized by CNP. It contained CARR's foreign travel information between Seattle, Washington, and Phnom Penh, Cambodia. Additionally, a query of the Treasury Enforcement Communications System (TECS) for CARR'S international departure information indicated that CARR had departed on January 13, 2010, at 12 a.m., from San Francisco International Airport to Taipei, Taiwan, on Eva Airways Flight number 17.

34. Based on CARR's travel documents, he was scheduled to return from Phnom Penh, Cambodia, to Seattle Tacoma International on February 2, 2010.

\\
\\
\\

COMPLAINT/CARR - 12
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## CONCLUSION

35. Based on the foregoing, I submit there is probable cause to believe that CRAIG THOMAS CARR traveled in foreign commerce with the intent to engage in illicit sexual conduct and did engage in illicit sexual conduct with Child Victim A and C, as described in this Affidavit, in violation of Title 18, United States Code, Sections 2423 (b), (c), and (f), and that CRAIG THOMAS CARR did use, persuade or entice Child Victim A and C to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, with the intent that the visual depictions would be transported or shipped to the United States, in violation of Title 18, United States Code, Sections 2251(c)(1) and (c)(2)(A).

_____
LISA VLAD, Complainant
Special Agent
Immigration and Customs Enforcement

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

Dated this 26 day of February, 2010.

_____
MARY ALICE THEILER
United States Magistrate Judge

COMPLAINT/CARR - 13
Case No.